```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
CHURCH & DWIGHT CO., INC.,           :
                                     :
            Plaintiff,               :     11 Civ. 1865 (JSR)
                                     :
       -v-                           :     OPINION AND ORDER
                                     :
THE CLOROX COMPANY,                  :
                                     :
            Defendant.               :
------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

By this action, plaintiff Church & Dwight Co. ("C & D") seeks, among other things, to preliminarily enjoin defendant Clorox Pet Products Company ("Clorox") from airing a commercial that makes allegedly misleading claims about the respective merits of each party's cat litter. On June 17, 2011, the Court held an evidentiary hearing on the "lab test" Clorox used to support the claims made in this commercial. This was followed by substantial legal briefing. Having now reviewed these materials at length, the Court finds that Clorox's test is insufficiently reliable to meet the required legal standards and that the commercial is likely to cause C & D irreparable harm if not enjoined. McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co., 938 F.2d 1544, 1549 (2d Cir. 1991). Thus, for the reasons explained below, the Court grants C & D's request for a preliminary injunction enjoining further use of the commercial in issue.

C & D manufactures several kinds of cat litter that incorporate Arm & Hammer baking soda under the Arm & Hammer trademark.

Those varieties include Arm & Hammer Double Duty Clumping Litter ("Double Duty") and Arm & Hammer Super Scoop Clumping Litter ("Super Scoop"). Clorox manufactures "Fresh Step" cat litter products, which utilize carbon instead of baking soda as an odor-fighting ingredient.

In the Fall of 2010, Clorox started airing certain commercials that immediately preceded the commercial here in dispute. In one commercial, cats were depicted choosing litter boxes filled with Fresh Step over litter boxes filled with Super Scoop. Declaration of David S. Cohen dated March 21, 2011 ("Cohen Decl.") ¶ 11 & Ex. 2. While this was occurring, the voiceover explained that "cats like boxes . . . with Fresh Step litter inside . . . because Fresh Step's scoopable litter with carbon is better at eliminating odors than Arm & Hammer." Id. In another commercial, cats were first depicted stepping into the box containing Super Scoop and then stepping out of the box and choosing the box with Fresh Step. Id. Ex. 3. In January of 2011, Clorox began airing still another commercial that displayed cats engaging in "clever" behavior. As the videos played, the voiceover announced: "Cats are smart. They can outsmart their humans. Their canines. Unlock doors. They're also smart enough to choose the litter with less odors." Id. Ex. 4.

C & D alleges that it then commissioned a test to replicate these situations and found that of the 158 cats tested, only six cats — less than four percent — rejected their litter box when the litter box was

filled with Super Scoop. Complaint ¶ 40. By contrast, eight cats — or five percent — allegedly rejected a litter box filled with Clorox's Fresh Step litter. Id. As a result, on January 5, 2011, C & D filed a complaint against Clorox, claiming that the aforementioned commercials were literally false. Cohen Decl. ¶ 12. Clorox agreed to permanently discontinue the commercials, id. ¶ 13, and C & D voluntarily dismissed the complaint on February 2, 2011.

Sometime around February 14, 2011, Clorox began airing a new commercial, the one here in issue. Id. ¶ 14 & Ex. 6. In this commercial, cats are featured doing "clever" things and the voiceover announces: "We get cats. They're smart. They can outsmart their humans. And their canines." Then a cat is seen entering a litter box and pawing through the litter as the voiceover continues, "That's why they deserve the smartest choice in litter." Id. The commercial then transitions to a demonstration that displays two laboratory beakers. One beaker is represented as Fresh Step and the bottom of it is filled with a black substance labeled "carbon." The other beaker is filled with a white substance labeled "baking soda." Id. While the second beaker is not identified as any specific brand of cat litter, Arm & Hammer is the only major cat litter brand that uses baking soda. Id. ¶ 7. Green gas is then shown floating through the beakers and the voiceover continues: "So we make Fresh Step scoopable litter with carbon, which is more effective at absorbing odors than baking soda." The green gas in the Fresh Step beaker then rapidly evaporates while

3

the gas level in the baking soda beaker barely changes. Id. ¶ 18. During this dramatization, small text appears at the bottom of the screen informing the viewer that Clorox's claims are "[b]ased on [a] sensory lab test." Id. at ¶ 19.

C & D alleges that the new commercial contains several false messages, including, inter alia, that cat litter products made with baking soda do not eliminate odors well and that cat litter products made with baking soda are less effective at eliminating odors than Clorox's Fresh Step cat litter. Complaint ¶ 63.

In order to establish its entitlement to a preliminary injunction, C & D must show: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010) (quoting Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979)). Success on the merits under § 43(a) of the Lanham Act requires a demonstration that the challenged advertisement is either (1) "literally false, i.e., false on its face," or (2) "while not literally false, . . . nevertheless likely to mislead or confuse consumers." Tiffany (NJ) Inc. v. eBay, Inc., 600 F.3d 93, 112 (2d Cir. 2010) (quoting Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 153 (2d Cir. 2007)). Where, as here,

scientific or technical evidence is said to establish an advertiser's claim (a so-called "establishment claim"), a plaintiff can prove literal falsity by showing that the test "did not establish the proposition for which [it was] cited" because it is either "not sufficiently reliable to permit a conclusion" or "simply irrelevant." Castrol, Inc. v. Quaker State Corp., 977 F.2d 57, 63 (2d Cir. 1992). Thus, C & D's likelihood of success on the merits depends upon its ability to show that Clorox's sensory lab test is "not sufficiently reliable" or "simply irrelevant."

To support its claim that carbon better eliminates cat malodor than baking soda, Clorox conducted an in-house test called the "Jar Test." In the Jar Test, Clorox prepared separate containers of: (i) fresh cat feces covered with carbon; (ii) fresh cat urine covered with carbon; (iii) fresh cat feces covered with baking soda; (iv) fresh cat urine covered with baking soda; (v) uncovered feces; and (vi) uncovered urine. See Declaration of Jodi Russell dated March 24, 2011 ("Russell Decl.") ¶ 11. After letting the sealed containers sit for twenty-two to twenty-six hours, the containers were placed in three sensory testing booths — one containing the carbon samples, one containing the baking soda samples, and one containing the uncovered feces and urine as a control — and eleven panelists rated the samples on a 0 to 15 scale. Id. ¶¶ 12, 14-15. This experiment was repeated four times, for a total of forty-four samplings. Id. ¶ 15. Carbon was found to reduce odor from 2.72 to 0 while baking soda was found to

5

reduce odor only from 2.72 to 1.85. Id. ¶ 16. Reducing odor from 2.72 to 1.85 represents a 32% decrease, precisely the decrease that is represented in the demonstration shown in Clorox's commercial. Id. ¶ 36.

Clorox trained the eleven panelists used in the Jar Test to evaluate odors on a specific scale, which its expert witness devised. Id. ¶¶ 13, 15. According to Clorox, the sensory evaluation method here employed by Clorox has been reviewed in textbooks and peer-reviewed journals, and is taught in more than forty universities in the United States. See Transcript of June 17, 2011 hearing ("Tr.") at 85:24-86:13. Over the course of their training, panelists smelled identical smells at different levels of intensity in order to develop a common metric for pungency. Id. at 89:17-22. Panelists also smelled different litter products, both with and without cat excrement, in order to learn to discriminate between cat malodor and other odors present in litter. Supplemental Declaration of Jodi Russell dated March 27, 2011 ¶ 11. Clorox taught its panelists that, when they could not detect a certain olfactory stimuli, they should note that absence by giving that odor a rating of zero. See Tr. at 107:1-15. As it turned out, all eleven panelists gave a malodor rating of zero whenever cat excrement was treated with carbon, resulting in a score of zero for each of the forty-four trials.

C & D criticizes the reliability of the Jar Test in at least three respects. First, it argues that Clorox's commercial broadly

claims that Fresh Step cat litter outperforms C & D's products in eliminating odor, a claim the Jar Test cannot support. Second, it argues that certain aspects of the Jar Test — particularly the uniformity of the panelists' findings that carbon completely eliminates cat malodor — are so suspicious as to render the Jar Test unreliable even for the narrower proposition that carbon better eliminates odor than baking soda. Third, it argues that the Jar Test is unreliable because it failed to use a ratio scale to compare degrees of malodor. The Court considers C & D's first two criticisms and, finding them meritorious, has no need to reach the third.

C & D's first criticism may be elaborated as follows. Under the doctrine of "falsity by necessary implication," a company's claims about particular aspects of its product may necessarily imply more sweeping claims about that product, and these implied claims may be "literally false" within the meaning of the Lanham Act. See Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 947 (3d Cir. 1993) ("The implication is that Pennzoil outperforms the other leading brands with respect to protecting against engine failure, because it outperforms them in protecting against viscosity breakdown, the cause of engine failure."); Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 158 (2d Cir. 2007) (citing Pennzoil). A court must analyze the disputed message in its "full context," Time Warner Cable, 497 F.3d at 158 (quoting Pennzoil, 987 F.2d at 946), to determine whether its "words or images, considered in context, necessarily imply a false

7

message." Id. Because an implication must be necessary in order to render the commercial's claims false, "if the language or graphic is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false." Id.

C & D argues that under the doctrine of necessary implication, Clorox's claims about the superiority of carbon to baking soda necessarily imply that Fresh Step cat litter better eliminates odors than do Arm & Hammer litters that use baking soda. While Clorox responds that one could reasonably interpret its commercial as simply comparing the general odor-reducing properties of carbon and baking soda, Clorox has not identified any basis for believing that any consumer who pays attention to its commercial reasonably cares about how effectively carbon works compared with baking soda outside the context of cat litter and competing litter products.

The Jar Test cannot reasonably support the necessary implication that Clorox's litter outperforms C & D's products in eliminating odor in cat litters. As noted above, Clorox sealed the jars of cat waste for twenty-two to twenty-six hours before subjecting them to testing. In actual practice, however, cats do not seal their waste, and smells offend as much during the first twenty-two hours as they do afterwards. Thus, the Jar Test's unrealistic conditions say little, if anything, about how carbon performs in cat litter in circumstances highly relevant to a reasonable consumer. Moreover, to substantiate the commercial's implied claims, the Jar Test must prove

8

not only that carbon eliminates odors in open cat litter (as opposed to sealed jars), but also (1) that it outperforms baking soda in that task and (2) that baking soda eliminates only thirty-two percent of odors, the amount by which, in the commercial, the gas dissipated in the beaker labeled "baking soda." Given that the Jar Test says little about how substances perform in litter as opposed to jars, it cannot possibly support Clorox's very specific claims with regard to litter. Consequently, the necessarily contrary implication of Clorox's commercials is literally false.

C & D's second criticism is that flaws in the methodology of the Jar Test render its conclusions unreliable. In particular, C & D notes that the uniformity with which panelists found that cat excrement treated with carbon contained "zero" malodor is highly implausible, and more likely reflects flaws in their in-house training or objectivity than any reliable result. See Tr. at 35:21-36:18. C & D maintains that humans are "noisy instruments" that, for neurological reasons, perceive the exact same thing differently at different times and report the presence of olfactory stimuli even where they do not exist. Id. at 34:14-17; see also Declaration of Daniel Ennis dated April 11, 2011 ¶ 21. Thus, given the variation even among the same person's reports at different times, C & D argues that eleven different people almost certainly would not uniformly report the same experience forty-four times.

C & D further notes that Clorox's own studies support this observation. First, in an internal panel validation test report — which involved cat litter — Clorox's panelists gave an average malodor score of greater than zero to a box of litter that admittedly contained no cat excrement. See Tr. 129:22-130:2. Second, in an earlier iteration of the Jar Test, eighteen percent of trials resulted in a report of some malodor in jars of excrement treated with carbon. Declaration of B. Thomas Carr dated April 5, 2011 ¶ 14 & Ex. A. Third, even Clorox's expert confirms that "[h]umans, even highly trained sensory panelists, are 'noisy' measuring instruments . . . . For a variety of physiological and psychological reasons, humans do not perceive and report exactly the same value when evaluating the same sample repeatedly." Id. ¶ 8.

Clorox responds that the mere fact that humans are noisy instruments does not preclude a uniform rating of zero where no malodor was in fact present. Moreover, according to Clorox, most of the studies showing that humans report experiencing stimuli even where none exists do not involve trained panelists such as those Clorox employed. These arguments misunderstand C & D's point. Clorox's own evidence acknowledges that humans, even trained panelists, report smells even when none are present. Thus, the Court agrees with C & D's expert that it is highly implausible that eleven panelists would stick their noses in jars of excrement and report forty-four

independent times that they smelled nothing unpleasant.[1] Accordingly, the Court concludes that the results of the Jar Test are "not sufficiently reliable to permit one to conclude with reasonable certainty that they established the proposition for which they were cited" in Clorox's commercial. Castrol, Inc. v. Quaker State Corp., 977 F.2d 57, 62-63 (2d Cir. 1992).

In short, because the Jar Test on which Clorox based its claims is unreliable and, even if it were reliable, could not possibly support Clorox's implied claims about the relative merits of carbon and baking soda in cat litter, the Court finds Clorox's claims are literally false. Id. Based on this literal falsity, C & D has met the requirement of likelihood of success on the merits.

Having met that requirement, C & D must further show that failure to enjoin Clorox will cause it irreparable harm. Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010). Under older law, if an advertisement is literally false, "the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public." McNeil-P.C.C., Inc., 938 F.2d at 1549 (quoting Coca-Cola Co. v. Tropicana Products, Inc., 690 F.2d 312, 317 (2d Cir. 1982)). More

---

[1] Taking the average false alarm rate of 14% from Kyle E. Mathewson et al., *To See or Not to See*, 29 J. NEUROSCIENCE 2725, 2727 (2009), the statistical probability of Clorox's results is 0.13%. Even assuming that Clorox's training and selection of panelists reduced the average false alarm rate to 7% (half of the observed average) the probability of Clorox's results is still only 4%.

recently, the formulation has been that "the likelihood of irreparable harm may be presumed where the plaintiff demonstrates a likelihood of success in showing that the defendant's comparative advertisement is literally false and that given the nature of the market, it would be obvious to the viewing audience that the advertisement is targeted at the plaintiff, even though the plaintiff is not identified by name." Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 148 (2d Cir. 2007). While Clorox argues that the Supreme Court cautioned in eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 393 (2006), against the use of presumptions in the context of establishing irreparable harm, the Second Circuit decided Time Warner after eBay.

In any case, the Court concludes that, legal presumptions aside, C & D has proved a likelihood of irreparable harm on the facts of this case. One of the beakers in Clorox's commercial bore the label "baking soda," and, as noted, C & D is the only major manufacturer of cat litter that uses baking soda as a deodorizing ingredient. Cohen Decl. ¶ 7. Consumers shopping for cat litter overwhelmingly identify baking soda with C & D's Arm & Hammer cat litter products. Id. Finally, the commercial shares themes with Clorox's former commercials - e.g., reference to cats' intelligence and cleverness - recalling those former commercials' explicit mention of C & D's products. Id. ¶ 15. These comparisons are at least as direct as those in Time Warner, where the Court found that viewers of a commercial that disparaged "cable" in an area in which Time Warner

12

served as the exclusive cable provider would "undoubtedly understand" that criticism to apply to Time Warner specifically. 497 F.3d at 162.

Put simply, Clorox, cloaking itself in the authority of "a lab test," made literally false claims going to the heart of one of the main reasons for purchasing cat litter. In such circumstances, where the misrepresentation is so plainly material on its face, no detailed study of consumer reactions is necessary to conclude inferentially that Clorox is likely to divert customers from C & D's products to its own unless the offending commercial is enjoined. Thus, C & D has successfully shown a high likelihood of irreparable harm.

Because C & D has shown that it will likely succeed on the merits and that it will suffer irreparable harm if a preliminary injunction is not granted, the Court hereby grants C & D's request for a preliminary injunction. Specifically, Clorox is hereby enjoined, immediately, from further airing the commercial in question. The Court further directs the parties to jointly call Chambers by no later than January 6, 2012 to schedule further proceedings in this case.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       January 3, 2012
       7:30 pm.